# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

YVONNE VAVOUKAKIS,

        Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

2:20-cv-01469-CLB

**ORDER**

        This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Yvonne Vavoukakis's ("Vavoukakis") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the court is Vavoukakis's motion for reversal and/or remand. (ECF No. 20.) In this motion, Vavoukakis seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF No. 21/22), and no reply was filed. Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), the court concludes the Commissioner's finding that Vavoukakis could perform past relevant work was supported by substantial evidence. Therefore, the court denies Vavoukakis's motion for remand, (ECF No. 20), and grants the Commissioner's cross-motion to affirm, (ECF No. 21).

**I.    STANDARDS OF REVIEW**

    A.    <u>Judicial Standard of Review</u>

        This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports

the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than

a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Vavoukakis applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on November 4, 2016, with an alleged disability onset date of July 14, 2016. (AR 230-240, 265.) The application was denied initially (AR 113-114), and upon reconsideration. (AR 143-144). Vavoukakis subsequently requested an administrative hearing. (AR 163-164.)

On April 11, 2019, Vavoukakis and her attorney appeared at a hearing before an Administrative Law Judge ("ALJ"). (AR 65-92.) A vocational expert ("VE") also appeared at the hearing. (*Id.*) The ALJ issued a written decision on October 21, 2019, finding that

Vavoukakis was not disabled because she could perform past relevant work. (AR 13-32.) Vavoukakis appealed, and the Appeals Council denied review on June 15, 2020. (AR 1-7.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Vavoukakis filed a complaint for judicial review on August 6, 2020. (ECF No. 1-1.)

B. ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 16-25.) Ultimately, the ALJ disagreed that Vavoukakis had been disabled from November 4, 2016, the date the application was filed. (*Id*. at 25.) The ALJ held that, based on Vavoukakis's RFC, age, education, and work experience, she could perform past relevant work as generally performed in the national economy. (*Id*. at 23-24.)

In making this determination, the ALJ started at step one. Here, the ALJ found Vavoukakis had not engaged in substantial gainful activity since the alleged onset date of July 14, 2016. (*Id*. at 18.) At step two, the ALJ found Vavoukakis had the following severe impairments: obesity, spondylosis of the lumbar spine, and left foot talonavicular arthritis. (*Id.* at 19.) At step three, the ALJ found Vavoukakis did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*)

Next, the ALJ determined Vavoukakis had an RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> she can lift/carry 20 pounds occasionally and 10 pounds frequently, can stand/walk for six hours in an 8-hour workday, and sit for six hours in an 8-hour workday. She can occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, and frequently balance. She must avoid concentrated exposure to extreme cold and hazards such as dangerous moving machinery and unprotected heights.

(*Id.* at 19-20.)

The ALJ found Vavoukakis's impairments could reasonably be expected to cause some of the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 20.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Vavoukakis's credibility. (*Id.* at 20-23.) The ALJ then determined that Vavoukakis was capable of performing past relevant work as a reservation agent and supervisor, which did not require the performance of work-related activities precluded by her RFC. (*Id.* at 23-24.)

Although the ALJ determined Vavoukakis could perform past relevant work and would therefore not be considered disabled, she continued to step five to determine whether other work was available. (*Id.*) Relying on the testimony of the VE, the ALJ determined that Vavoukakis's age, education, past relevant work experience, and RFC would allow her to perform occupations existing in significant numbers in the national economy, such as: price marker, usher, or parking lot cashier. (*Id.* at 24.) Accordingly, the ALJ held that Vavoukakis had not been under a disability since July 14, 2016, through the date of the decision, and denied her claim. (*Id.* at 24-25.)

### III.  ISSUE

Vavoukakis seeks judicial review of the Commissioner's final decision denying her DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 20.) Vavoukakis raises a single, narrow issue for this court's review: whether the ALJ properly rejected Vavoukakis's treating physician, Dr. Raimundo Leon's, treating opinion.

### IV.  DISCUSSION

#### A.  The ALJ Articulated Specific and Legitimate Reasons for Rejecting Dr. Leon's Treating Opinion.

Vavoukakis argues that the ALJ impermissibly rejected the opinion of Vavoukakis's treating physician, Dr. Raimundo Leon. (*See* ECF No. 20.) Specifically, Vavoukakis argues that (1) the ALJ's statement regarding Dr. Leon's treating opinion lacks specificity,

(2) Dr. Leon's treatment records expand beyond Exhibit 4F, which only contain records through 2017, and (3) to the extent the Commissioner may claim that the ALJ relied on the contradictory opinions of the DDS non-examining physicians, those opinions lower the ALJ's burden of articulation and are not substantial evidence alone. (*Id.* at 9-11.)

Within the administrative record, an ALJ may encounter medical opinions from three types of physicians: treating, examining, and non-examining. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). For claims filed before March 27, 2017, each type is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927. Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'").

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ must provide "specific and legitimate reasons" for discounting a contradicted treating physician's opinion. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and the conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). "[A]n [ALJ] may disregard medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam).

///

Because Dr. Leon's opinions regarding Vavoukakis's RFC were contradicted by the other physicians, the ALJ could reject the opinions by giving "specific and legitimate reasons" for doing so. *Bayliss*, 427 F.3d at 1216. In determining Vavoukakis's RFC and assessing Dr. Leon's opinion, the ALJ found as follows:

> On January 11, 2019, pain specialist, Ramundo (sic) Leon M.D., submitted a medical source statement opining that the claimant was at a less than sedentary exertional level and would miss more than four days per month of work due to her medical impairments. (Ex 8F, 22F) On January 4, 201[9], the claimant informed Dr. Leon that she was quite happy with the current medical management and her symptoms waxed and waned with good days and bad days. Her medications were not changed. (Ex 24F/6) Dr. Leon would not complete a functional capacity evaluation as he believed it should be done by her primary care physician or physical therapist. (Ex 4F/6) In February 2019, she reported that her medications were helping and she wished to postpone her scheduled rhizotomy. (Ex 24F/5) The limitations given in this medical source statement are not supported by any of the treatment records at Exhibit 4F or any of the other objective medical records, and thus, this opinion is given little weight.

(AR 21-22.) Additionally, the ALJ noted other objective medical evidence and subjective testimony in the record that contradicted Dr. Leon's opinion. (AR 20-23.) Specifically, the ALJ found that Vavoukakis's alleged disabling symptoms were not consistent with the longitudinal medical evidence and despite allegations of physical limitations she had only regular and benign medical treatment, her subjective complaints were not supported by objective findings, and her daily activities (such as preparing simple meals, doing laundry, and going grocery shopping) did not support her alleged symptoms. (AR 22.)

Vavoukakis first argues that "[m]erely stating that a medical opinion is not supported by the objective medical record is not enough." (ECF No. 20 at 9.) However, the ALJ explicitly identified and summarized objective medical evidence that contradicted Dr. Leon's opinion, such as noting overall improvement after rhizotomies, an examination from January 2017 revealed no focal deficit, grossly intact motor strength, no fasciculations, and no spasticity, an x-ray performed in January 2018 revealed no acute findings, a note from July 2018 revealed no joint tenderness or swelling, normal gait, with normal motor strength and tone, and an examination performed in December 2018 of her back was

normal. (AR 21.) Thus, the ALJ permissibly discounted Dr. Leon's opinion because it was inconsistent with the objective findings in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Next, Vavoukakis argues that Dr. Leon's treatment records expand beyond Exhibit 4F, which only contain records through 2017, and continue throughout 2018 and 2019 and "the ALJ's claim of a lack of objective support appears to be based on her lay interpretation of the MRI and examinations." (ECF No. 20 at 10.) Vavoukakis does not explain how any findings contained in any of Dr. Leon's other treatment notes warranted greater restrictions in the RFC. *Champagne v. Colvin*, 582 Fed.Appx. 696, 697 (9th Cir. 2014) (unpublished) (rejecting assertion that ALJ improperly disregarded treating physicians' opinions, in part, where claimant "identified no additional medically necessary limitation that should have been included in the [RFC]"). The records largely reflect continued improvement through 2018 and 2019, and that Vavoukakis was "happy" with her medical management. (AR 542-543, 547, 549, 551-553, 556-557, 690, 692, 694-697.) To the extent the ALJ erred by not specifically referencing treatment notes beyond those contained in Exhibit 4F, such omission was harmless because the additional records were similar to those in Exhibit 4F, and it was therefore inconsequential to the outcome of the case. *Tommasetti*, 533 F.3d at 1038 ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotations and citations omitted).

Finally, Vavoukakis argues "the Commissioner may claim that the ALJ relied on the contradictory opinions of DDS non-examining physicians, those opinions lower the ALJ's burden of articulation and are not substantial evidence alone." (ECF No. 20 at 10.) However, the ALJ did not rely solely on the DDS non-examining physicians in determining Vavoukakis's RFC. As discussed above, the ALJ found Vavoukakis's alleged disabling symptoms were not consistent with the longitudinal medical evidence and despite

allegations of physical limitations she had only regular and benign medical treatment, her subjective complaints were not supported by objective findings, and her daily activities (such as preparing simple meals, doing laundry, and going grocery shopping) did not support her alleged symptoms. (AR 22.)

Therefore, for all of the reasons discussed above, this court concludes the ALJ gave specific and legitimate reasons for affording little weight to Dr. Leon's opinion. Accordingly, the court finds and concludes the ALJ's decision is supported by substantial evidence.

## V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds the ALJ decision was supported by substantial evidence.

Accordingly, **IT IS THEREFORE ORDERED** that Vavoukakis's motion to remand (ECF No. 20) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 21) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: July 8, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**